UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

HARSHA COOKE,

    Plaintiff,

v.                                                     CASE NO.:

K12 INC.,                                     **DEMAND FOR TRIAL BY JURY**

    Defendant.
_____/

## COMPLAINT

Plaintiff, Harsha Cooke (hereinafter "Plaintiff"), by and through the undersigned counsel, sues Defendant, Ally Financial Inc. (hereinafter "Defendant"), and in support thereof respectfully alleges violations of the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## INTRODUCTION

1. The TCPA was enacted to prevent companies like Defendant from invading American citizen's privacy and to prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

1

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5. Jurisdiction and venue, for purposes of this action, are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6. Subject matter jurisdiction and federal question jurisdiction, for purposes of this action, are appropriate and conferred by 28 U.S.C. § 1331, which provides that the District Courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and, this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). *See Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

7. Venue is proper in this District as Plaintiff resides within this District, in Broward County, Florida, the violations described in this Complaint occurred in this District and Defendant transacts business within this District.

## FACTUAL ALLEGATIONS

8. Plaintiff is a natural person and citizen of the State of Florida, residing in Broward County, Florida.

9. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

10. Defendant is a corporation responsible for attempting to provide a report on a child to Plaintiff.

11. Defendant is a corporate entity with its principal place of business located at 2300 Corporate Park Drive, Herndon, Virginia 20171, has a registered agent, CT Corporation, within the State of Florida located at 1200 South Pine Island Road, Plantation, Florida 33324, and which conducts business within the State of Florida.

12. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number at issue in this action, (470) XXX-3163 (hereinafter "cellular telephone"), and was the called party and recipient of Defendant's hereinafter described calls.

13. Defendant intentionally, knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by calling Plaintiff's cellular telephone, beginning in 2015, with such frequency as can reasonably be expected to harass and in effort to provide a report on a child.

14. Defendant's calls to Plaintiff continued, on average, once per day.

15. Upon information and belief, some or all of the calls Defendant placed to Plaintiff's cellular telephone were placed using an "automatic telephone dialing system" (hereinafter "Autodialer"), which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").

16. Furthermore, each of the calls at issue were placed by Defendant using an artificial or prerecorded voice, as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

17.     Beginning in or about 2015, Defendant began bombarding Plaintiff's cellular telephone in attempt to provide a report on a child.

18.     Upon receipt of the calls, Plaintiff's caller identification feature identified the calls were being initiated from, but not limited to, the phone number 404-334-4790.

19.     At all material times hereto, Defendant, was attempting to provide a report on a child to "Ms. Walter," an individual other than Plaintiff.

20.     Upon Plaintiff's receipt of one such call from Defendant, in or about May 2016, Plaintiff answered the call, received Defendant's artificial or prerecorded message, held on the line to be connected to a live agent/representative and informed said agent/representative to immediately cease all calls to her cellular telephone and that she is not "Ms. Walter;" furthermore, Plaintiff informed Defendant's aforementioned agent/representative that its incessant calls were harassing her and demanded Defendant immediately cease all calls to her cellular telephone; thereby, unequivocally revoking any previously perceived expressed consent to be called using Defendant's Autodialer, predictive dialer, artificial voice or prerecorded message.

21.     During the aforementioned phone conversation with Defendant's agent/representative, Plaintiff explicitly revoked any previously perceived expressed consent Defendant may have believed it had for placement of telephone calls to Plaintiff's cellular telephone by the use of an Autodialer or artificial voice or prerecorded message.

22.     Each subsequent call Defendant placed to Plaintiff's cellular telephone was done so after she revoked consent and without the express consent of Plaintiff.

23.     Each subsequent call Defendant placed to Plaintiff's cellular telephone was knowingly and willfully placed to her cellular telephone without express consent.

24. On multiple occasions, Plaintiff informed Defendant to immediately cease calling her cellular telephone; however, despite these attempts, Defendant's calls to Plaintiff's cellular telephone continued.

25. Defendant called Plaintiff on her cellular telephone in excess of one-hundred (100) times since 2015.

1. Due to the extreme volume of calls Plaintiff received, Plaintiff was unable to maintain a fully contemporaneous call log of each and every call she received from Defendant; however, the following is a sample of calls Plaintiff received from September 2015 through December 2016:

  i. Two calls on September 28, 2015 at 8:08 a.m. and 6:47 p.m.;

  ii. One call on October 6, 2015 at 9:58 a.m.;

  iii. One call on October 13, 2015 at 5:31 p.m.;

  iv. One call on November 2, 2015 at 10:57 a.m.;

  v. One call on November 5, 2015 at 3:41 p.m.;

  vi. One call on November 19, 2015 at 4:48 p.m.;

  vii. One call on February 8, 2016 at 7:24 p.m.;

  viii. Two calls on February 12, 2016 at 9:00 a.m. and 9:26 a.m.;

  ix. One call on February 17, 2016 at 2:16 p.m.;

  x. Two calls on February 18, 2016 at 6:47 p.m., and 7:11 p.m.;

  xi. One call on February 23, 2016 at 5:41 p.m.;

  xii. One call on March 1, 2016 at 11:32 a.m.;

  xiii. Two calls on March 3, 2016 at 3:01 p.m. and 3:30 p.m.;

  xiv. Three calls on March 4, 2016 at 10:31 a.m., 12:53 p.m., and 3:16 p.m.;

xv. One call on March 7, 2016 at 9:03 a.m.;

xvi. One call on March 8, 2016 at 12:46 p.m.;

xvii. One call on March 9, 2016 at 11:40 a.m.;

xviii. One call on March 10, 2016 at 2:31 p.m.;

xix. One call on March 11, 2016 at 2:35 p.m.;

xx. One call on March 17, 2016 at 11:47 a.m.;

xxi. One call on March 18, 2016 at 9:46 a.m.;

xxii. One call on March 24, 2016 at 4:02 p.m.;

xxiii. Two calls on March 29, 2016 at 4:31 p.m. and 4:33 p.m.;

xxiv. One call on April 11, 2016 at 12:00 p.m.;

xxv. One call on April 14, 2016 at 6:34 p.m.;

xxvi. One call on April 15, 2016 at 9:46 a.m.;

xxvii. One call on April 18, 2016 at 12:02 p.m.;

xxviii. Two calls on April 20, 2016 at 8:45 a.m. and 10:40 a.m.;

xxix. Two calls on April 22, 2016 at 9:59 a.m. and 10:31 a.m.;

xxx. Three calls on April 25, 2016 at 9:01 a.m., 9:12 a.m., and 12:49 p.m.;

xxxi. One call on April 28, 2016 at 9:01 a.m.;

xxxii. One call on May 3, 2016 at 10:01 a.m.;

xxxiii. One call on May 10, 2016 at 6:35 p.m.;

xxxiv. One call on May 12, 2016 at 10:53 a.m.;

xxxv. One call on May 13, 2016 at 8:45 a.m.;

xxxvi. Three calls on May 18, 2016 at 1:40 p.m., 5:46 p.m., and 5:47 p.m.;

xxxvii. Two calls on May 20, 2016 at 8:45 a.m. and 10:39 a.m.;

    xxxviii.    One call on May 24, 2016 at 10:55 a.m.;

    xxxix.    One call on August 9, 2016 at 12:11 p.m.;

    xl.    One call on August 18, 2016 at 6:01 p.m.;

    xli.    One call on August 19, 2016 at 3:33 p.m.;

    xlii.    One call on September 7, 2016 at 11:25 a.m.;

    xliii.    One call on September 13, 2016 at 9:26 a.m.;

    xliv.    One call on September 16, 2016 at 1:10 p.m.;

    xlv.    One call on October 6, 2016 at 1:26 p.m.;

    xlvi.    Two calls on October 18, 2016 at 8:46 a.m. and 1:04 p.m.;

    xlvii.    One call on October 19, 2016 at 1:50 p.m.;

    xlviii.    One call on October 25, 2016 at 5:33 p.m.;

    xlix.    One call on October 26, 2016 at 8:44 a.m.;

    l.    One call on October 27, 2016 at 2:45 p.m.;

    li.    One call on November 1, 2016 at 12:14 p.m.;

    lii.    One call on November 8, 2016 at 12:13 p.m.;

    liii.    One call on November 15, 2016 at 1:17 p.m.; and

    liv.    One call on December 2, 2016 at 4:59 p.m.

26. Defendant has, or should be in possession and/or control of, call logs, account notes, Autodialer reports and/or other records that detail the exact number of calls it placed to Plaintiff.

27. Despite actual knowledge of its wrongdoing, Defendant continued its campaign of abuse by continuing to call Plaintiff despite not having Plaintiff's express consent to call her cellular telephone.

28. Defendant has corporate policies and/or procedures to use an Autodialer or artificial voice or prerecorded message, and to place autodialed calls, just as it did to Plaintiff's cellular telephone in this case, with no way for the called party and recipient of the calls, including Defendant, to permit, elect, or invoke the removal of Plaintiff's cellular number from Defendant's call list.

29. The structure of Defendant's corporate policies and procedures permits the continuation of calls to individuals like Plaintiff, despite these individuals revoking any consent, or perceived consent, Defendant may have believed it had to place such calls.

30. Defendant's corporate policies and procedures provided no means for Plaintiff to have her cellular number removed from Defendant's call list; or, otherwise invoke and/or request the cessation and/or suppression of calls to Plaintiff from Defendant.

31. Defendant knowingly employs methods that do not permit the cessation or suppression of autodialed calls to Plaintiff's cellular telephone.

32. None of Defendant's telephone calls placed to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

33. As recently acknowledged by Judge Easterbrook of the Seventh Circuit Court of Appeals in *Patriotic Veterans, Inc. v. Zoeller*, "every call uses some of the phone owner's time and mental energy, both of which are precious."

34. For each call Defendant placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered from the occupation of her cellular telephone line and cellular telephone by unwelcomed calls which made the cellular phone unavailable for legitimate incoming or outgoing calls.

35. For each call Defendant placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered from unnecessary expenditure of her time. The time Plaintiff spent on answered calls was unnecessary because she repeatedly asked for calls to stop. Additionally, Plaintiff expended unnecessary time for unanswered calls by dealing with notifications and call logs that reflected the unwanted calls. Furthermore, this also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

36. Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff.

37. Each and every call Defendant placed to Plaintiff's cellular telephone without express consent resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

38. Each and every call Defendant placed to Plaintiff's cellular telephone without express consent resulted in the injury of trespass to Plaintiff's chattel, namely her cellular telephone and cellular telephone services.

39. As a result of aforementioned tenacious phone calls and collection efforts, Plaintiff was affected, both personally and individually, as she experienced an invasion of privacy and the intrusion upon her right of seclusion. Plaintiff experienced loss of concentration, sleep, job and income. Furthermore, Plaintiff was hindered by the loss of phone battery life and phone minutes as well as the cost of additional charging, and the intrusion upon and occupation of the capacity of her cell phone. All of the abovementioned were caused by, and/or directly related to, Defendant's phone calls to Plaintiff.

## COUNT I
**(Violation of the TCPA)**

40. Plaintiff incorporates and realleges paragraphs one (1) through thirty-nine (39) as if fully set forth herein.

41. Defendant willfully violated the TCPA with respect to Plaintiff, especially for each of the Autodialer calls it made to Plaintiff's cellular telephone after Plaintiff notified and requested Defendant that she wished for the calls to immediately cease.

42. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an Autodialer or artificial voice or prerecorded voice message without Plaintiff's prior express consent and in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

Respectfully submitted,

_____
Jared M. Lee, Esquire
Florida Bar No #:  0052284
Morgan & Morgan, Tampa P.A.
20 N. Orange Avenue, Suite 1600
Orlando, FL 32801
Tele:  (407) 420-1414
Fax:  (407) 245-3485
JLee@ForThePeople.com
MRathbun@ForThePeople.com
JSharpe@ForThePeople.com
Counsel for Plaintiff